UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 09-21576-CIV-O'SULLIVAN

[CONSENT]

NICOLAS GUAQUETA,

    Plaintiff,

v.

UNIVERSAL BEVERAGES, LLC and
UNIVERSAL TRADING & ENGINEERING
CORP.,

    Defendants.
_____/

## ORDER

THIS MATTER is before the Court[1] on the Motion for Summary Judgment and Memorandum of Law in Support (DE# 27, 12/15/09) filed by the defendants Universal Beverages, LLC (hereinafter "UB") and Universal Trading & Engineering Corp. (hereinafter "UTECO"). Having reviewed the applicable filings and the law and having heard argument from the parties at the March 17, 2010 status hearing, it is

ORDERED AND ADJUDGED that the Motion for Summary Judgment and Memorandum of Law in Support (DE# 27, 12/15/09) is **GRANTED** for the reasons stated herein.

## BACKGROUND

The plaintiff, Nicolas Guaqueta (hereinafter "plaintiff"), filed the instant action against the defendants, UB and UTECO, for employment discrimination violations under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. See

---

[1] On March 2, 2010, this matter was transferred to the undersigned following Magistrate Judge Bandstra's Order of Recusal (DE# 35, 3/2/10).

Complaint (DE# 1, 6/10/09). The defendants have filed the instant motion for summary judgment arguing that the plaintiff was not an employee of UTECO and that UB and UTECO are not an "integrated enterprise" under the ADA. See Motion for Summary Judgment and Memorandum of Law in Support (DE# 27, 12/15/09). The plaintiff filed a response to the instant motion on January 7, 2010. See Response to Defendants' Motion for Summary Judgment and Memorandum of Law in Support (DE# 29, 1/7/10). On January 25, 2010, the defendants filed their reply. See Defendants' Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment and Memorandum of Law in Support (DE# 30, 1/25/10). On February 19, 2010, the defendants also filed the transcript of the plaintiff's deposition in support of the summary judgment motion. See Deposition of Nicolas Guaqueta (DE# 33 at 6, 2/19/10).[2] On March 17, 2010, the Court heard brief argument on the summary judgment motion.

## FACTS

UTECO was established in 1983. See Affidavit of Roger Jaar (DE# 27-1 at 1, 12/15/09). UTECO is involved in energy, water and sewer projects in developing countries, including the Bahamas, Bangladesh, Bolivia, Costa Rica, Dominican Republic, El Salvador, Guatemala, Guyana, Haiti, Honduras, Nicaragua and Peru. See Affidavit of Rosario Harper (DE# 27-1 at 3, 12/15/09). UTECO assists clients with technical expertise, project management and logistics and provides products to meet clients' needs including industrial equipment. Id. at 4. UTECO is also involved in the beverage and bottling business. "UTECO . . . offers its international clients

---

[2] To avoid confusion, the Court will refer to the page numbers automatically assigned by the CM/ECF system when citing to the plaintiff's deposition transcript and the exhibits attached to the briefs.

technologies [related] to the production lines and post-production stages of the beverage and bottling industry including [industrial equipment]." Id. at 5.

UB was established in 2001. See Affidavit of Roger Jaar (DE# 27-1 at 1, 12/15/09). UB is in the soft drink business. It sells and distributes various soft drinks and beverages including Couronne,[3] Parmalat milk, Tropicana, Coco King and Snow Queen Vodka throughout South Florida and certain interstate markets.[4] Id. at 1-2; Deposition of Nicolas Guaqueta (DE# 33 at 6, 2/19/10).

UB and UTECO operate out of rented commercial space located at 2250 N.W. 93 Avenue, Miami, Florida. See Affidavit of Rosario Harper (DE# 27-1 at 4, 12/15/09). UTECO occupies the first floor and UB occupies the second floor of that building. Id. at 4-5; Affidavit of Jean Theuvenin (DE# 27-1 at 9, 12/15/09). However, while renovations were made to the building, UTECO personnel operated out of the second floor. See Deposition of Nicolas Guaqueta (DE# 33 at 16, 2/19/10). After the renovations two individuals from UTECO's account department, Ingrid Evers and Laura Jaar,[5] remained on the second floor. Id. UTECO rents warehouse space at this location and its warehouse entrance is located on the north side of the building. Product deliveries for UTECO come through this entrance. See Affidavit of Rosario Harper (DE# 27-1 at 5,

---

[3] Couronne is a fruit champagne. See Deposition of Nicolas Guaqueta (DE# 33 at 6, 2/19/10).

[4] With respect to Snow Queen Vodka, UB would import it from Pakistan and sell it to distributors in Chicago and New York. See Deposition of Nicolas Guaqueta (DE# 33 at 11, 2/19/10).

[5] Ms. Jaar also performed accounting services for UB. Ms. Jaar was paid proportionately by UB and UTECO for the work she performed for each company. See Affidavit of Jean Theuvenin (DE# 27-1 at 11, 12/15/09).

12/15/09). UB also has warehouse space allocated for its use at this location. Id. Product deliveries for UB come through a separate warehouse entrance. See Affidavit of Jean Theuvenin (DE# 27-1 at 9, 12/15/09).[6] UB and UTECO's offices have separate entrances, separate locks and security codes and separate reception areas. See Affidavit of Rosario Harper (DE# 27-1 at 5, 12/15/09). They each pay separate costs for use of the dumpster, trash pickup and disposal. Id. UB and UTECO each pay their proportionate share for use of the printer and monthly office equipment rental. Id. UB and UTECO maintain separate accounting records, bank accounts, lines of credit, billing, telephone numbers, vendors and payroll.[7] A hedge divides UB and UTECO's respective sides of the parking lot. See Affidavit of Jean Theuvenin (DE# 27-1 at 10, 12/15/09).

Roger Jaar, the plaintiff's former father-in-law, has an ownership interest in UTECO and UB. Mr. Jaar is a shareholder of UTECO and a Managing Member of UB. See Affidavit of Roger Jaar (DE# 27-1 at 1, 12/15/09).[8] Viera Cussianovich is the Administrative Manager of UTECO. See Affidavit of Rosario Harper (DE# 27-1 at 6, 12/15/09). Ms. Cussianovich "manages the day-to-day personnel matters for UTECO,

---

[6] The plaintiff testified during his deposition that there was no physical divider in the warehouse and products for both companies were co-mingled. See Deposition of Nicolas Guaqueta (DE# 33 at 15, 2/19/10). The plaintiff further testified that the separate warehouse entrances for UB and UTECO were not always adhered to. Id.

[7] The companies both use a third party payroll processor. See Affidavit of Rosario Harper (DE# 27-1 at 5, 12/15/09). However, UB and UTECO maintain separate payrolls. See Affidavit of Jean Theuvenin (DE# 27-1 at 10, 12/15/09).

[8] The plaintiff states that Roger Jaar is the president of both UTECO and UB and cites to Exhibit 10. See Response to Defendants' Motion for Summary Judgment and Memorandum of Law in Support (DE# 29 at 2, 1/7/10). However, Exhibit 10 does not state that Mr. Jaar is president of both companies. Id. at 36-38.

4

including hiring, firing, transfer[ring], training, promotion decisions, scheduling, absences, vacations, holidays, sick days[ ] and leaves of absence for UTECO employees." Id. During the plaintiff's employment, Jean Theuvenin, UB's General Manager, was in charge of human resources for UB. See Affidavit of Jean Theuvenin (DE# 27-1 at 10, 12/15/09). Mr. Theuvenin was responsible for the hiring, firing, transferring, training and promotion of UB employees. Id. He was also responsible for scheduling, absences, vacations, holidays, sick days and leaves of absence for UB employees. Id.

Rosario Harper is the Business Manager for UTECO. See Affidavit of Rosario Harper (DE# 27-1 at 3, 12/15/09). Ms. Harper "ha[s] authority over hiring, firing, vacation, absences, sick days and leaves of absence for UTECO employees that work under [her] direct supervision." Id. at 6. During the plaintiff's employment with UB, Ms. Harper also served as a Business Development Manager for UB. Id. In that role, Ms. Harper was primarily responsible for the marketing of vodka and wine for UB. Ms. Harper "did not have any direct involvement in issues related to human resources" with respect to UB's employees. Id. However, Ms. Harper signed a letter as the Business Manager of UB regarding the plaintiff's insurance coverage after the plaintiff was terminated. See Letter (DE# 29 at 42, 1/7/10). "At all times, [Ms. Harper] was paid separately by [UB] for work which [she] was performing for [UB]." Id.

During the plaintiff's employment, UB and UTECO both employed Laura Jaar, the plaintiff's ex-wife.[9] See Affidavit of Jean Theuvenin (DE# 27-1 at 11, 12/15/09).Ms.

---

[9] The plaintiff divorced Ms. Jaar in late 2008. See Affidavit of Roger Jaar (DE# 27-1 at 2, 12/15/09).

Jaar performed accounting and financial reporting for each company. At all times, UTECO and UB paid their proportionate share for Ms. Jaar's services. Id.; Affidavit of Rosario Harper (DE# 27-1 at 6, 12/15/09). During the plaintiff's employment, UB and UTECO also employed James Vulcain. See Affidavit of Rosario Harper (DE# 27-1 at 7, 12/15/09). Mr. Vulcain "managed UTECO's vehicle fleets overseas in Haiti" and "UTECO paid its proportionate share for [Mr.] Vulcain's services performed for UTECO." Id. In the early mornings, Mr. Vulcain worked for UB. See Affidavit of Jean Theuvenin (DE# 27-1 at 11, 12/15/09). During this time, Mr. Vulcain operated a forklift, sorted and loaded pallets of beverages and soft drinks into UB's delivery trucks and maintained and repaired UB's delivery trucks as needed. Id. UB paid its proportionate share for Mr. Vulcain's services. Id.

The plaintiff was employed by UB[10] as a sales and distribution manager. See Deposition of Nicolas Guaqueta (DE# 33 at 7, 2/19/10). The plaintiff worked for UB from April 2005 to April 2007. See Complaint (DE# 1-1 at 5, 6/10/09). The plaintiff left UB in April 2007 to receive medical treatment. See Deposition of Nicolas Guaqueta (DE# 33 at 4, 2/19/10). The plaintiff was terminated in August 2008. Id. at 9.

During his employment with UB, the plaintiff's email address had UTECO's domain name. See Exhibit 6, (DE# 27-2 at 3, 12/15/09) (displaying email address "nguaqueta@utecous.com"). UB covered all or a portion of the plaintiff's health, dental, long-term disability and life insurance premiums. See Exhibit 6, (DE# 27-2 at 3, 12/15/09). UTECO did not pay the plaintiff's insurance premiums. See Deposition of

---

[10] The plaintiff acknowledges that he was an employee of UB. See Deposition of Nicolas Guaqueta (DE# 33 at 3, 2/19/10) (acknowledged working for UB). The parties dispute whether UTECO and UB are an integrated enterprise.

Nicolas Guaqueta (DE# 33 at 18-19, 2/19/10). Although the plaintiff was an employee of UB, Viera Cussianovich, the Administrative Manager for UTECO,[11] was charged with "tak[ing] care of the insurance for [the plaintiff]." See Exhibit 6 (DE# 27-2 at 3) (email exchange between Laura Jaar and Viera Cussianovich regarding the plaintiff's insurance forms); Exhibit 7 (DE# 27-2 at 4).[12] The enrollment form for life insurance provided to the plaintiff by Ms. Cussianovich listed the Group ID as "UTECO" and the employer as "Universal Trading & Engineering Corp ." See Form (DE# 27-2 at 5). The plaintiff listed UB as his employer on his W-4 and on his dental and health insurance enrollment forms. See Exhibit 14 (DE# 27-2 at 6); Exhibit 15 (DE# 27-2 at 7); Exhibit 16 (DE# 27-2 at 8).

On January 28, 2009, the plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). See Complaint (DE# 1-1 at 16, 6/10/09). The plaintiff listed UB and UTECO as the employers who discriminated against the plaintiff. Id. The Change of Discrimination form was signed by the plaintiff under penalty of perjury. Id.

## STANDARD OF REVIEW

The Court, in reviewing a motion for summary judgment, is guided by the

---

[11] In her position as the Administrative Manager for UTECO, "[Ms.] Cussianovich manage[d] the day-to-day personnel matters for UTECO, including hiring, firing, transfer[ring], training, promotion decisions, scheduling, absences, vacations, holidays, sick days, and leaves of absence for UTECO employees." See Affidavit of Rosario Harper (DE# 27-1 at 6, 12/15/09).

[12] Ms. Cussianovich provided the plaintiff's ex-wife with the forms the plaintiff needed to fill out and requested that these forms be returned to her. See Exhibit 6 (DE# 27-2 at 3). Additionally, Ms. Cussianovich sent an email to the plaintiff informing him of his life insurance and long term disability benefits provided by UB and additional insurance that was available at the plaintiff's expense. See Exhibit 7 (DE# 27-2 at 4).

7

standard set forth in Federal Rule of Civil Procedure 56(c), which states, in relevant part, as follows:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c). The moving party bears the burden of meeting this exacting standard. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). That is, "[t]he moving party bears the initial responsibility of informing the . . . [C]ourt of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (quoting Celotex, 477 U.S. at 323) (internal quotation marks omitted). In assessing whether the moving party has satisfied this burden, the Court is required to view the evidence and all factual inferences arising therefrom in the light most favorable to the non-moving party. Batey v. Stone, 24 F.3d 1330, 1333 (11th Cir. 1994). Summary judgment is appropriate when there is no dispute as to any material fact and only questions of law remain. Id. If the record presents factual issues, the Court must deny the motion and proceed to trial. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

Despite these presumptions in favor of the non-moving party, the Court must be mindful of the purpose of Rule 56 which is to eliminate the needless delay and expense to the parties and to the Court occasioned by an unnecessary trial. Celotex, 477 U.S. at 322-23. Consequently, the non-moving party cannot merely rest upon his bare

assertions, conclusory allegations, surmises or conjectures. Id. As the Supreme Court noted in Celotex:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against the party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which the party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

Id.  at 322-323. Thus, the mere existence of a scintilla of evidence in support of the non-moving party's position is insufficient. There must be evidence on which the jury could reasonably find for the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251 (1986).

In ruling on a motion for summary judgment, the Court construes a pro se litigant's pleadings more liberally than it would the pleadings of a represented party. See Harris v. Ostrout, 65 F.3d 912, 915 (11th Cir. 1995) (per curiam). However, "a pro se litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment." Brown v. Crawford, 906 F.2d 667, 670 (11th Cir. 1990).

## ANALYSIS

**A.    The ADA**

"The ADA was enacted 'to provide a clear and comprehensive national mandate to end discrimination against individuals with disabilities and to bring persons with disabilities into the economic and social mainstream of American life.'" Harrison v. Benchmark Electronics Huntsville, Inc., 593 F.3d 1206, 1212 (11th Cir. 2010) (citing H.R. Rep. No. 101-485, pt. 2, at 23 (1990)). Title I of the ADA addresses employment

discrimination. See Gathright-Dietrich v. Atlanta Landmarks, Inc., 452 F.3d 1269, 1272 (11th Cir. 2006) (noting that Title I of the ADA regulates discrimination in the workplace). "[T]he ADA makes it illegal for a 'covered entity' to 'discriminate against a qualified individual with a disability.'" Harrison, 593 F.3d at 1212 (citing 42 U.S.C. § 12112(a)).  The term "covered entity" is defined by the ADA as "an employer, employment agency, labor organization, or joint labor-management committee." 42 U.S.C. § 12111(2). The term "employer" means "a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, and any agent of such person. . . ." 42 U.S.C. § 12111(5).

   The defendants seek final summary judgment against the plaintiff on the ground that UB is not an "employer" as defined by the ADA and that UB and UTECO are not an "integrated enterprise." See Motion for Summary Judgment and Memorandum of Law in Support (DE# 27, 12/15/09). In the instant case, it is undisputed that UB was an employer of the plaintiff. See Motion for Summary Judgment (DE# 27 at 7, 12/15/09) (acknowledging that the plaintiff is an employee of UB); Deposition of Nicolas Guaqueta (DE# 33 at 3, 2/19/10) (the plaintiff acknowledged working for UB). It is further undisputed that UB has less than fifteen employees. See Affidavit of Rosario Harper (DE# 27-1 at 6, 12/15/09) (attesting that UB has a total of three employees and that between August 8, 2008 and December 14, 2009, UB did not have 15 or more employees); Affidavit of Jean Theuvenin (DE# 27-1 at 9, 12/15/09) (attesting that as of August 2008, UB had 11 employees). However, if the Court determines that UB and UTECO are an "integrated enterprise," UB and UTECO together would have the

requisite number of employees to be considered an "employer" under the ADA. See Affidavit of Rosario Harper (DE# 27-1 at 6, 12/15/09) (attesting that UTECO employed 14 employees as of August 2008). Thus, the sole issue on summary judgment is whether UB and UTECO are an integrated enterprise.

**B.    Integrated Enterprise**

Courts consider the following four criteria in determining whether two or more companies are an integrated enterprise (also referred to as "single employer").[13] The criteria are as follows: (1) interrelation of operations; (2) centralized control of labor relations; (3) common management (4) and common ownership or financial control. See McKenzie v. Davenport-Harris Funeral Home, 834 F.2d 930, 933 (11th Cir. 1987) (Title VII case); Kaufman v. AutoNation, Inc., No. 99-8377, 2000 WL 35722358, at *12 (S.D. Fla. Jun. 7, 2000) (ADA and age discrimination in employment case noting that "[w]ithin the employment context, courts have [used] the [four prong test] to determine whether companies may be considered integrated enterprises. . . ."); Keene v. TECO Energy Corp., Case No.98-2406-CIV-T-17B, 2000 WL 230243, at *4 (M.D. Fla. Mar. 1, 2000) (applying four-prong test to ADA case). "The totality of the circumstances controls, thus, no single factor is conclusive, and the presence of all four factors is not necessary to a finding of single employer." E.E.O.C. v. Dolphin Cruise Line, Inc., 945 F. Supp. 1550, 1553 (S.D. Fla. 1996) (ADA case). The burden is on the plaintiff to

---

[13] "A 'joint employer' relationship is different from, though sometimes confused with, a 'single employer' situation." Virgo v. Riviera Beach Assocs., Ltd., 30 F.3d 1350, 1359 n.6 (11th Cir.1994). A joint employer relationship can be found where "'one employer[,] while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer.'" Id. at 1360 (quoting NLRB v. Browning-Ferris Indus., 691 F.2d 1117, 1122 (3d Cir.1982)).

establish the existence of an integrated enterprise. Cardinale v. S. Homes of Polk Cnty, Inc., 310 F. App'x. 311, 312 (11th Cir. 2009) (per curiam).

### 1.     Interrelation of Operations

The first factor is interrelation of operations. In determining whether this factor is met, courts look to whether the companies share employees and resources. Keene, 2000 WL 230243 at *3. In Fike v. Gold Kist, Inc., 514 F. Supp. 722, 726-27 (N.D. Ala. 1981), the district court considered factors such as interchange of employees, high level supervisors or equipment, combined accounting records, banking records, lines of credit, payroll preparation, switchboards, telephone numbers or offices. See also Walker v. Boys & Girls Club of Am., 38 F. Supp. 2d 1326, 1331 (M.D. Ala. 1999) (noting that the National Labor Relations Board has identified seven indicia of interrelatedness: (1) combined accounting records; (2) combined bank accounts; (3) combined lines of credit; (4) combined payroll preparation; (5) combined switchboards; (6) combined telephone numbers and (7) combined officers.). Here, UB and UTECO operate out of the same commercial building. See Affidavit of Rosario Harper (DE# 27-1 at 4, 12/15/09). However, UTECO occupies the first floor and UB occupies the second floor of the building, with the exception of one UTECO employee Ingrid Evers who works on the second floor.[14] Id. at 4-5; Affidavit of Jean Theuvenin (DE# 27-1 at 9, 12/15/09). UB and UTECO's offices have separate entrances, separate locks and security codes and separate reception areas. See Affidavit of Rosario Harper (DE# 27-1 at 5, 12/15/09).

---

[14] Laura Jaar also works on the second floor, however, she performs work for both UTECO and UB and is paid by both corporations accordingly. See Deposition of Nicolas Guaqueta (DE# 33 at 16, 2/19/10); Affidavit of Jean Theuvenin (DE# 27-1 at 11, 12/15/09).

UB and UTECO each pay separate costs for use of the dumpster, trash pickup and disposal and pay their proportionate share for use of the printer and monthly office equipment rental. Id. Of importance, UB and UTECO maintain separate accounting records, bank accounts, lines of credit, billing, telephone numbers, vendors and payroll. See Swallows v. Barnes & Noble Book Stores, 128 F.3d 990, 994 (6th Cir. 1997) (finding no interrelatedness of operations where companies each kept their own records and maintained separate bank accounts and offices); McKenzie, 834 F.2d at 933-34 (finding parent and subsidiary had interrelated operations where they were marketed to consumers as "twins in service" and parent kept subsidiary's books and records, issued its payroll checks and paid its bills); Dolphin, 945 F. Supp. at 1553-54 (finding interrelated operations where companies shared accounting services and offices and one company issued checks on the other's behalf and maintained personnel and other business records for both companies at the same office). Based on these facts, the Court finds that UB and UTECO do not have interrelated operations.

    **2.    Centralized Control of Labor Relations**

This factor looks at which company has the power to hire and fire employees and control employment practices. See Swallows, 128 F.3d at 995; Fike, 514 F. Supp. at 727). "[T]he 'control' required to meet the test of centralized control of labor relations is not potential control, but rather actual and active control of day-to-day labor practices." Fike, 514 F. Supp. at 727. "The mere provision of insurance and pension benefits, or other benefit program does not establish central control of labor relations." Id. In E.E.O.C. v. Dolphin Cruise Line, Inc., 945 F. Supp. 1550, 1554 (S.D. Fla. 1996), this Court found evidence of centralized control of labor relations between two corporations

where the first corporation recruited employees for itself and for the second corporation, the first corporation approved personnel discharges and stored the personnel records for both corporations and employees working for the second corporation could be transferred to the first corporation.

Here, Viera Cussianovich, the Administrative Manager of UTECO, "manages the day-to-day personnel matters for UTECO, including hiring, firing, transfer[ring], training, promotion decisions, scheduling, absences, vacations, holidays, sick days[ ] and leaves of absence for UTECO employees." See Affidavit of Rosario Harper (DE# 27-1 at 6, 12/15/09). She does not have control over personnel matters concerning UB. Jean Theuvenin, UB's General Manager, was in charge of human resources and was responsible for the hiring, firing, transferring, training and promotion of UB employees as well as for scheduling, absences, vacations, holidays, sick days and leaves of absence for UB employees. See Affidavit of Jean Theuvenin (DE# 27-1 at 10, 12/15/09). While some employees including Laura Jaar, Rosario Harper and James Vulcain performed work for UB and UTECO, they were at all times compensated by each corporation separately. See Fike, 514 F. Supp. at 726-27 (finding no integrated enterprise where "[a]lthough [the first company] prepared the [second company's] salaried payroll, [the first company] was fully reimbursed by [the second company] for this and all other services provided by [the first company]."). With respect to the plaintiff's benefits, UB covered all or a portion of the plaintiff's health, dental, long-term disability and life insurance premiums. See Exhibit 6, (DE# 27-2 at 3, 12/15/09). UTECO did not pay the plaintiff's insurance premiums. See Deposition of Nicolas Guaqueta (DE# 33 at 18-19, 2/19/10). Thus, there is no centralized control of labor

relations in the instant case.

### 3. Common Management

The third factor, common management, looks for common directors and officers. "Cases treating two separate corporate entities as a single employer have placed heavy emphasis on the existence of common directors and officers." Fike, 514 F. Supp. at 727; see also Dolphin, 945 F. Supp. at 1554 (finding common management where companies had the same president and at least three individuals served as members of the board of directors for both companies and lower level managers of both companies assisted each other with daily operations of the companies). Here, Rosario Harper is the Business Manager for UTECO. See Affidavit of Rosario Harper (DE# 27-1 at 3, 12/15/09). During the plaintiff's employment with UB, Ms. Harper also served as a Business Development Manager for UB. Id. In that role, Ms. Harper was primarily responsible for the marketing of vodka and wine for UB. Ms. Harper performed distinct functions for UB and UTECO and was paid proportionately by each company. The plaintiff has not shown any other common managers or officers. The Court finds that the plaintiff has not satisfied this prong.

### 4. Common Ownership or Financial Control

The last factor is common ownership or financial control. In the instant case, it is undisputed that Roger Jaar has an ownership interest in both UB and UTECO. This factor alone is insufficient to deny the defendants' summary judgment motion. See Cardinale v. S. Homes of Polk Cnty, Inc., 310 F. App'x. 311, 312-313 (11th Cir. 2009) (per curiam) (Family and Medical Leave Act of 1993 ("FMLA") case affirming summary judgment for defendants finding that defendants were not an integrated enterprise

where plaintiff was only able to show one factor, common ownership, and had not carried her burden as to the other three factors); Morrison v. Amway Corp., 336 F. Supp. 2d 1193, 1200 (M.D. Fla. 2003) (FMLA case finding that common ownership was "not enough to create a genuine issue of material fact seeing that [the companies] d[id] not have common management, interrelated operations or centralized control of labor operations."). Similarly here, common ownership alone is insufficient to preclude summary judgment for the defendants.

Additionally, the plaintiff has not shown financial control. Here, there is no evidence that either company consults the other regarding purchases, that UB and UTECO borrow funds from each other or that they comingle profits and operating expenses. In Player v. Nations Biologics, Inc., 993 F. Supp. 878, 883 (M.D. Ala. 1997), the plaintiff established financial control where the main company maintained a centralized account pooling the profits of all the other companies to cover the losses of the less successful companies. By contrast in Fike, the district court did not find common ownership where one company did not exercise any financial control over the other company, revenues and operating expenses were not comingled and one company did not borrow funds from the other. 514 F. Supp. at 727. Similarly in Walker v. Boys & Girls Club of Am., 38 F. Supp. 2d 1326, 1335 (M.D. Ala. 1999), the district court found no financial control where each company prepared its own budget, kept its own payroll and handled its own financial matters.

## CONCLUSION

The record evidence does not support a finding that UB and UTECO are an integrated enterprise. There is no evidence that UB and UTECO's operations are

interrelated, that either company has control over the other's financial matters or labor relations and the only common manager between the two corporations is Rosario Harper. The record does show common ownership in that Roger Jaar has an ownership interest in both UB and UTECO. However, this factor alone is insufficient for the Court to find an integrated enterprise. Because the plaintiff cannot show that UB and UTECO are an integrated enterprise and UB does not have sufficient employees to qualify as an "employer" under the ADA, the defendants are entitled to final summary judgment. The Motion for Summary Judgment and Memorandum of Law in Support (DE# 27, 12/15/09) is **GRANTED**. A final judgment will be entered by separate order, in accordance with Fed. R. Civ. P. 58.

DONE AND ORDERED in Chambers at Miami, Florida this **13th** day of July, 2010.

JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies to:
All counsel of record

Copies mailed by Chambers to:
Nicolas Guaqueta, pro se
1589 Passion Vine Circle
Weston, FL 33326